UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| Gia Knight,<br>individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>- against -<br><br>Walmart Inc.,<br><br>Defendant, | _____CV__________<br><br>CLASS ACTION COMPLAINT<br><br>Jury Trial Demanded |

**CLASS ACTION COMPLAINT**

Plaintiff, Gia Knight ("Plaintiff"), alleges upon information and belief, including investigation conducted by her attorneys, except for allegations pertaining to Plaintiff, which are based on her personal knowledge:

**NATURE OF THE ACTION**

1. Plaintiff, Gia Knight, brings this consumer class action lawsuit individually, and on behalf of similarly situated consumers ("Class Members") who purchased for personal, family or household use the Great Value Original Coffee Creamer (35.3 oz) (the "Product").

2. Plaintiff purchased the Product in New York as a result of the materially misleading and deceptive trade practices of Walmart Inc. and its affiliates (collectively, "Walmart" or "Defendant") in derogation of New York law. Specifically, Walmart violated New York General Business Law §349 and §350, New York's consumer protection statutes, and breached various express warranties by marketing, promoting, and selling the Product.

Plaintiff was a New York resident at the time of purchase.

3. Plaintiff purchased the Product based on the Product's labeling and advertising stating that the Product contains "about 500 servings per container" and that the serving size for the Product is "1 tsp. (2g)", when in fact based on third-party laboratory testing the Product provides consumers with only 386 servings, 23% fewer servings than promised by the Product's label. Because the statement "about 500 servings" is located within the Nutrition Facts Panel (NFP) those words have a precisely defined meaning. They mean, as a matter of law, the Product must contain between 499.5 and 500.49 servings of a volume of one teaspoon. One teaspoon likewise has a precisely defined volume of 5.0 milliliters.

4. Based on relevant Federal regulations, Walmart erroneously stated the metric mass equivalent of the stated serving size and, as a result, the Product did not contain the promised number of servings stated on the Product's label and advertising. The mass equivalent is the "(2g)" notation following the "1 tsp" serving size in the NFP.

5. Defendant unlawfully marketed, advertised, sold, and distributed the Product injuring Plaintiff and the other Class Members by understating the mass equivalent of the one teaspoon serving size and thus delivering far fewer than the represented 499.50 to 500.49 servings of the Product.

6. The allegations made in this Action are very similar to the allegations made by the plaintiffs in *Yonan v. Walmart, Inc.*, 591 F. Supp. 3d 1291 (S.D. Fla. 2022), which was originally filed in Florida federal court and then settled in a different forum. In *Yonan*, labeling and advertising of a Coffee Mate powdered creamer claimed the product contained 499.50 to 500.49 1-teaspoon servings. However, third-party testing found that the Coffee Mate product in fact contained 383.3 servings (because the metric mass equivalent of one teaspoon was

actually 2.6 grams rather than then 2 grams represented in the Coffee Mate NFP), constituting a shortage of 23.2% of the promised servings. *Yonan* was ultimately settled as part of a nationwide class action; however, prior to settlement, Nestle revised the serving size of the Coffee Mate creamer product to "3/4 tsp (2g)".

**PARTIES**

7. Plaintiff, Gia Knight, is an individual consumer over the age of eighteen (18) who at the time of purchase was a resident of Manhattan, New York County, New York. Plaintiff currently resides in California and is domiciled in Colorado. Plaintiff seeks injunctive relief and damages on behalf of herself and the Class, and respectfully requests a jury trial as to damages.

8. Defendant, Walmart Inc., is a Delaware corporation with a principal place of business in Bentonville, Benton County, Arkansas. Walmart is registered as a foreign corporation in the state of New York.

9. Walmart is a mass merchandiser of consumer products in the U.S. with net sales of $420 billion during its 2023 fiscal year.[1] Walmart has over 4,600 retail stores nationwide,[2] including 98 in New York.[3]

10. Walmart sells brand name merchandise as well as markets lines of merchandise under its private brands, including "Great Value,"[4] which is the brand of the Product at issue in this Class Action Complaint.

11. Walmart manufactures, markets, promotes, advertises, and sells Great Value coffee creamers, including the Product at issue in this litigation.

[1] https://www.sec.gov/Archives/edgar/data/104169/000010416923000020/wmt-20230131.htm
[2] https://corporate.walmart.com/about/location-facts
[3] https://www.walmart.com/store-directory/ny
[4] https://s201.q4cdn.com/262069030/files/doc_financials/2023/ar/Walmart-10K-Reports-Optimized.pdf at 8.

12. Plaintiff alleges that, at all times relevant herein, Walmart and its subsidiaries, affiliates, and other related entities and suppliers, as well as their respective employees, were the agents, servants, or employees of Walmart and at all times relevant herein, each was acting within the purpose and scope of that agency or employment.

13. In addition, Plaintiff alleges that, in committing the wrongful acts alleged herein, Walmart, in concert with its subsidiaries, affiliates, and/or other related entities and suppliers, and their respective employees, planned, participated in, and furthered a common scheme to induce members of the public to purchase the Product by means of untrue, misleading, deceptive, and/or fraudulent representations.

14. Whenever reference in this Class Action Complaint is made to any act by Walmart or its subsidiaries, affiliates, distributors, retailers and other related entities and suppliers, such allegation shall be deemed to mean that the principals, officers, directors, employees, agents, and/or representatives of Walmart committed, knew of, performed, authorized, ratified and/or directed that act or transaction on behalf of Walmart while actively engaged in the scope of their duties.

**JURISDICTION & VENUE**

15. This Court has jurisdiction over the subject matter presented by this Complaint because it is a class action arising under the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (2005), which explicitly provides for the original jurisdiction of the Federal Courts of any class action in which any member of the plaintiff class is a citizen of a state different from any defendant, and in which the matter in controversy exceeds in the aggregate the sum of $5,000,000.00, exclusive of interest and costs. Pursuant to 28 U.S.C. § 1332(d)(2)(A), Plaintiff alleges that the total claims of the members of the Plaintiff's Class in this action are in excess of

$5,000,000.00, in the aggregate, including any statutory damages, and exclusive of interest and costs, and as set forth below, diversity of citizenship exists under CAFA because, as more fully set forth below, Plaintiff was a resident of New York at the time of purchase, currently resides in California and is domiciled in Colorado, and Defendant is incorporated in Delaware with a principal place of business in Arkansas. Thus, the parties are citizens of different states. Based on information and belief regarding nationwide sales of the coffee creamer product at issue in this lawsuit over the most recent three-year period, Plaintiff has a good faith basis to plead that the total claims of the Plaintiff's Class (New York residents), including statutory damages, exceed $5,000,000.00.

16. Venue is proper in this District pursuant to 28 U.S.C. §1391(b)(2) because of a substantial part of the events or omissions giving rise to the claim occurred in this District. Specifically, Plaintiff purchased the Product in Valley Stream, Nassau County, New York and Defendant has intentionally availed itself of the laws and markets within this District.

## FACTUAL ALLEGATIONS

17. Plaintiff, Gia Knight, has purchased the Great Value Original Coffee Creamer (35.3 oz) Product for some time, including within the last two years, and most recently on August 8, 2023, from the Walmart Supercenter located at 77 Green Acres Rd., Valley Stream, NY 11581. A copy of the receipt is attached hereto as **Exhibit "A."**

18. The Product that is the subject of this litigation is comprised of powdered coffee creamer provided to consumers for the purpose of mixing with coffee along with its packaging and labeling.

19. Walmart markets the Product as a way to "turn your ordinary cup of joe into an extraordinary delight…"[5] and "with only 10 calories per teaspoon."[6]

20. The advertising and labeling for the Product, including the Product purchased by Plaintiff, were prepared and/or approved by Walmart and its agents.

21. The Product's NFP on the back of the Product claims that the Product provides "**about 500 servings per container**" and that the serving size for the Product is "1 tsp. (2g)." Under FDA regulations "about" means the container contains between 499.50 and 500.49 servings[7].

22. The front label of the Product states that the net weight of the Product is "1kg", which is equivalent to 1,000 grams.

23. Photographs of the Product's labeling and nutrition panels are attached hereto and incorporated herein as **Exhibit "B."**

24. Based on this labeling and advertising, including the 2g metric mass equivalent of the serving size listed on the Product's NFP located on the back of the Product, a consumer purchasing this Product would reasonably believe that the Product contains 500 servings of powdered coffee creamer.

25. However, the labeling of the Product does not comply with relevant Federal regulations and the contents of the Product cannot yield the 500 servings promised had those Federal regulations been correctly followed. The same defect in the Product's labeling also makes the statements on the label a deceptive practice in violation of the New York General Business Law Section 349 and Section 350.

[5] https://www.walmart.com/ip/Great-Value-Original-Coffee-Creamer-35-3-oz/10315241?from=/search
[6] Id.
[7] 21 C.F.R. §§ 101.9(b)(8)

26. Federal regulations require that Walmart states in the nutrition facts panel of its label the serving size in a common household measure[8] and, parenthetically after the common household measure, the metric unit equivalent thereof.[9] Additionally, any gram (mL) quantity between 2 and 5g (mL) should be rounded to the nearest 0.5g (mL)."[10]

27. The Product's nutrition facts label states that one (1) teaspoon is the common household measure for the Product and that the metric mass equivalent of the one teaspoon serving size is 2g. *See* Exhibit B.

28. However, expert testing of the Product, a copy of which is attached hereto and incorporated herein as **Exhibit "C,"** establishes that the metric mass equivalent of a one teaspoon serving of the Product is actually 2.6 grams, 30% heavier than the 2 grams claimed on the nutrition facts panel on its label.

29. As required under the Federal regulations, the metric unit equivalent of the one teaspoon serving of the Product[11] rounded to the nearest 0.5g (mL)[12] should be parenthetically disclosed after the common household measure of one teaspoon.

30. Accordingly, the Product's nutrition facts panel should have stated "2.5g" rather than "2g" for the metric mass equivalent of the one teaspoon serving of the Product.

---

[8] 21 C.F.R. §§ 101.9(b)(1) Importantly, the serving size is not random or decided by whim; rather, FDA publishes Reference Amounts Customarily Consumed (RACC). The serving size is the household measure that most closely approximates the RACC. *See* 21 C.F.R. §101.9(b)(2)(iii). The serving size may not exactly match the RACC and if it does not then the corresponding metric unit parenthetically following the serving size will report the actual metric size, in the case of the Product, the number of grams contained within the common household measure serving size. *See* FDA. 2019. Food Labeling: Serving Sizes of Foods That Can Reasonably Be Consumed At One Eating Occasion, Reference Amounts Customarily Consumed, Serving Size-Related Issues, Dual-Column Labeling, and Miscellaneous Topics: Guidance for Industry. Item B.5. https://www.fda.gov/media/133699/download.
[9] 21 C.F.R. §§ 101.9(b)(7)
[10] 21 C.F.R. §§ 101.9(b)(7)(ii)
[10] 21 C.F.R. §§ 101.9(b)(8)
[11] 21 C.F.R. §§ 101.9(b)(7)
[12] 21 C.F.R. §§ 101.9(b)(7)(ii)

31. Walmart failed to meet this Federal labeling requirement by erroneously stating the metric mass equivalent of the stated serving size and this failure rendered the products labeling deceptive and misleading. As explained in more detail in the paragraphs that follow, each teaspoon weighing 2.5g rather than 2.0g, would cheat purchasers of the Product, like Plaintiff and the absent class members, out of 100 of the promised 500 servings. This would damage Plaintiff in the amount of 20% of the purchase price.

32. Walmart incorrectly calculated the number of servings provided by the Product given that the "determination of the number of servings per container shall be based on the serving size of the product"[13] and that a "serving" is "expressed in a common household measure."[14]

33. Walmart calculated the number of servings as follows: The net mass of the Product listed on the Product label (*See* Exhibit B) was divided by the erroneous metric mass equivalent of the 1 teaspoon serving size, 2 grams, to calculate the number of servings the Product provides (i.e., 1,000g net weight ÷ 2g per serving = 500 servings). But the actual weight of one teaspoon of the Product is 2.6g (not 2.0g); thus using 2.0g, results in a significant misleading overstatement of the number of servings the Product yields.

34. Expert testing establishes that the Product, as designed and sold, yields 114 fewer servings than claimed on the Product's label. This means **consumers of the Product were cheated out of 23% of the servings they paid for**.

35. The advertising and labeling for the Product, including the Product most recently purchased by Plaintiff, were prepared and/or approved by Walmart and its agents, and were disseminated and marketed by Walmart and its agents through advertising and labeling containing the misrepresentations alleged herein.

---

[13] 21 C.F.R. §§ 101.9(b)(8)
[14] 21 C.F.R. §§ 101.9(b)(1)

36. The advertising for the Product was designed to encourage consumers to purchase the Product and reasonably misled reasonable consumers, including Plaintiff and the Class Members, into purchasing the Product.

37. Walmart markets and distributes the Product and is the company that created and/or authorized the unlawful, fraudulent, misleading and/or deceptive advertising, labeling, packaging and statements about the Product.

38. Since Plaintiff purchased the Product as a product advertising itself as containing 499.50 to 500.49 servings of powdered coffee creamer, and it was not such a product, Plaintiff was damaged in proportion to the servings of powdered coffee creamer not received.

39. Specifically, Plaintiff and other consumers of the Product, were cheated out of 23% of the servings they paid for based on the advertising, marketing, packaging and labeling of the Product.

40. The Product's representations, as outlined and explained above, which are uniformly, consistently and prominently displayed on each individual package of the Product are untrue, misleading and deceive the public. In making this allegation that the representations on the packaging regarding the number of servings contained in the package are untrue, Plaintiff relies upon independent laboratory testing, attached as Exhibit "C", showing that the Product contains an average of 386 servings, 23% fewer servings than the 500 servings claimed by the Product's label, meaning that 23% of the promised product servings were not delivered to Plaintiff and the putative Class.

41. Additionally, on information and reasonable belief, Plaintiff alleges that Walmart has had actual knowledge of the deceptive advertising and labeling of its Product including the same independent laboratory testing depicting the 23% missing servings as the testing attached

hereto as Exhibit "C" since approximately April 26, 2023, and to our knowledge has not taken any corrective actions.

42. On information and reasonable belief, Plaintiff purchased the Product on at least one occasion following the date on which Walmart had actual knowledge of the deceptively labeled and advertised Product. Plaintiff was unaware the Product labeling and advertising was deceptive, false and materially misleading at the time Plaintiff made the purchase.

43. Upon information and reasonable belief, despite Walmart's knowledge of the falseness and deceptiveness of the Product's labeling and advertising, Walmart has continued to market, and distribute the Product, using the unlawful, fraudulent, misleading and/or deceptive advertising and statements about the Product.

44. Plaintiff is aggrieved by the deceptively labeled and marketed Product as she relied on the misleading and deceptive labeling and advertising and was deprived of the benefit of the bargain she reasonably anticipated from the Product's labeling and advertising; specifically, she was deprived of the benefit she paid for, a product labeled and advertised as containing 499.50 to 500.49 servings of powdered coffee creamer, when in actuality based on expert testing the Product contains on average only 386 servings.

45. Reasonable consumers, such as the Plaintiff, will continue to be aggrieved by the deceptive and misleading labeling and advertising of the Product, as reasonable consumers will continue to plausibly rely on the Product labeling and advertising and be misled and deceived into believing that they are purchasing a Product containing 500 servings of powdered coffee creamer.

46. Upon information and reasonable belief, Walmart could sell the Product without deceptive labeling by, for example, correctly stating the metric mass of a one teaspoon serving and adjusting the number of one teaspoon servings yielded by the Product according to the actual

metric mass of each one teaspoon serving.

47. Walmart touts that it is “dedicated to help people around the world save money…” and states that its strategy “is to …make trust a competitive advantage.”[15] Walmart failed to meet its own delineated standard and strategy in committing the wrongful acts alleged herein. To prepare the same number of cups of coffee (1 teaspoon per cup), Walmart will get to sell and reap profits on 23% more sales of the Product. Customers like Plaintiff and the absent Class members will receive 23% less than promised.

## PLAINTIFF’S ALLEGATIONS

48. Plaintiff, Gia Knight, has purchased the Great Value Original Coffee Creamer (35.3 oz) Product for some time, including within the last two years, and most recently on August 8, 2023, from the Walmart Supercenter located at 77 Green Acres Rd., Valley Stream, NY 11581. *See* Exhibit A.

49. Plaintiff is aggrieved by the deceptively labeled and marketed Product as she relied on the materially misleading and deceptive labeling and advertising and was deprived of the benefit of the bargain she reasonably anticipated from the Product’s labeling and advertising; specifically, she was deprived of the benefit she paid for, a product labeled and advertised as containing 499.50 to 500.49 servings of powdered coffee creamer, when in actuality based on expert testing, the Product contains on average only 386 servings.

50. Since Plaintiff purchased the Product advertised as capable of providing 499.50 to 500.49 servings of powdered coffee creamer and it was not such product, Plaintiff was damaged in proportion to the servings of powdered coffee creamer not received.

---

[15] https://www.sec.gov/Archives/edgar/data/104169/000010416923000020/wmt-20230131.htm at 6.

51. The Product's representations, as outlined and explained above, which are uniformly, consistently, and prominently displayed on each individual package of the Product are untrue, misleading, and deceive the public.

52. Reasonable consumers, such as Plaintiff, will continue to be aggrieved by the deceptive and misleading labeling and advertising of the Product, as reasonable consumers will continue to reasonably believe that they are purchasing Product containing 499.50 to 500.49 servings of powdered coffee creamer. A consumer has no ability to determine if the representations on the label are true without buying the Product and apportioning them in accordance with the Product's label instructions or having it tested by a laboratory. Reasonable consumers are entitled to rely on the truth of label statements about the number of servings a product provides.

53. Upon information and reasonable belief, Defendant could sell the Product without deceptive labeling by, for example, correctly stating the metric mass equivalent of the one teaspoon serving and adjusting the number of one teaspoon servings yielded by the Product according to the actual metric mass of each one teaspoon serving.

54. Walmart unlawfully marketed, advertised, sold, and distributed the Product.

55. The Product was a deceptively marketed and labeled product under New York law because the Product's labeling and advertising made false, deceptive, and materially misleading representations.

56. Walmart unlawfully and deceptively marketed, advertised, sold, and distributed the Product to New York purchasers, because the Product contained false and deceptive labeling which materially misled consumers.

57. Additionally, on information and reasonable belief, Walmart had actual knowledge of the false, deceptive and misleading label since approximately April 26, 2023, and continues to market, advertise, sell and distribute the Product with its false, deceptive and misleading label.

58. Walmart sold the Product at a premium price per actual serving provided, and Walmart's false and misleading representations on the Product deceive New York consumers for the reasons previously alleged above.

59. Had Walmart not approved, authorized, and participated in the advertising, marketing, labeling, and sale of the Product containing the above-referenced deceptive representations, Plaintiff and the other Class members would not have been economically injured because Plaintiff and the other Class members would not have purchased the Product or would have paid less for the Product.

60. In addition, Plaintiff could not have determined whether the number of servings claimed on the Product's label was accurate other than to purchase the Product and apportion it in accordance with the stated serving size or to have them tested by a laboratory.

61. Plaintiff spent time, and incurred significant expense, having the Product tested by a third-party expert.

62. As an immediate, direct, and proximate result of Defendant's false, misleading, and deceptive representations, Defendant injured Plaintiff and the other Class Members in that Plaintiff and other Class Members:

a. paid a sum of money for the Product that was not as represented;

b. paid a premium price per serving of the Product as the number of servings were not provided as represented;

c. were deprived of the benefit of the bargain because the Product they purchased

were different than what Defendant warranted;

d. were deprived the benefit of the bargain because the Product they purchased had less value than what was represented by Defendant;

e. did not receive Product that measured up to their expectations as created by Defendant;

f. purchased Product that was other than what was represented by Defendant;

g. received Product that Plaintiff and the other members of the Class did not expect or consent to; and

h. received Product that had different characteristics than what Defendant promised.

63. Accordingly, Plaintiff and the other Class Members have suffered injury in fact and lost money or property as a result of Defendant's wrongful conduct.

64. Plaintiff and the other Class Members did not obtain the full value of the advertised Product due to Defendant's misrepresentations.

65. Plaintiff and the other Class Members purchased, purchased more of, or paid more for the Product than they would have done had they known the truth about the Product.

66. The Product is worth significantly less than what Plaintiff and members of the Class paid for, and/or is not what Plaintiff and members of the Class reasonably intended to receive.

67. The Product was deceptively advertised and marketed for the reasons previously alleged herein.

68. With respect to the Product, Plaintiff and members of the Class paid a price premium or received less than they bargained for, because Plaintiff and members of the Class reasonably believed the Product contained the number of servings of powdered coffee creamer

specified on the label and in the advertising, when in fact the Product did not contain anywhere near the promised number of servings.

69. Likewise, if Plaintiff and members of the Class had known that the Product did not contain the number of servings of powdered coffee creamer specified on the label and in the advertising, they would not have purchased the Product or would have paid less for the Product.

70. Plaintiff and the other Class Members would likely purchase the Product again if the deceptive advertising and labeling on the Product were corrected.

71. Because Defendant continues to advertise, market, and sell the deceptively labeled Product, there is a risk that Plaintiff and other Class Members could purchase the Product again, mistakenly believing the Product had been changed in some way such that the labeling and advertising were at that time true.

72. Plaintiff has no way of knowing if or when Walmart makes changes to the Product and whether the Product's labeling and advertising remains false and deceptive. For example, Walmart could change the contents of the Product and Plaintiff would have no way of knowing if the Product's representations about the number of servings it contains are deceptive other than to purchase the Product and evaluate how many servings are contained within.

73. Accordingly, Plaintiff and all other consumers purchasing the Product have been, are, and will continue to suffer a loss and be damaged by the deceptively, dishonestly, and misleadingly marketed, advertised and labeled Product and are being deprived of the benefit of the bargain they reasonably anticipated from the Product's labeling, marketing and advertising.

74. Plaintiff has performed all conditions precedent to bringing this Action.

## CLASS ALLEGATIONS

75. Plaintiff brings this class action pursuant to all applicable provisions of Section 23 of the Federal Rules of Civil Procedure, on behalf of themselves and all members of the following Class:

> New York Class: During the fullest period allowed by law, all persons who purchased the Product within the State of New York from a Walmart brick and mortar store for personal, family or household use and not resale.

76. Members of the Class described above are referred to herein as "Class Members" or members of the "Class."

77. Plaintiff reserves the right to amend the Class definition or add a Class or Classes if discovery and/or further investigation reveal that the Class definition(s) should be narrowed, expanded or otherwise modified.

78. Excluded from the Class are Defendant, its subsidiaries, affiliates, and employees; all persons who make a timely election to be excluded from the Class; governmental entities; and the Judge(s) to whom this case is assigned and any immediate family members thereof.

79. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of Plaintiff's claims on a class-wide basis using the same evidence as would be used to prove those claims in individual actions alleging the same claims.

### A. Numerosity – Federal Rules of Civil Procedure 23(a)(1)

80. The members of the Class are so numerous that individual joinder of all class members is impracticable.

81. The precise number of members of the Class is unknown to Plaintiff, but it is clear that the number greatly exceeds the number that would make joinder practicable. Upon information and belief Plaintiff estimates the number of members in the Class to be in the tens-of-

thousands or more, particularly given Defendant's comprehensive distribution and sales network throughout New York.

82. Members of the Class may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

83. The number of individuals who comprise the Class is so numerous that the disposition of all such person's claims in a class action, rather than in individual actions, will benefit both the parties and the courts.

**B. Commonality and Predominance – Federal Rules of Civil Procedure 23(a)(2) and 23(b)(3)**

84. Common questions of law or fact exist as to all members of each Class and predominate over any questions affecting only individual members of the Class. All members of the Class were exposed to Defendant's deceptive and misleading advertising and marketing claims alleged herein.

85. Furthermore, common questions of law or fact include:

f. whether Defendant engaged in the conduct as alleged herein;

g. whether Defendant's practices violate applicable law cited herein;

h. whether Plaintiff and the other members of the Class are entitled to actual, statutory, or other forms of damages, and/or other monetary relief; and

i. whether Plaintiff and the other members of the Class are entitled to equitable relief, including but not limited to injunctive relief.

86. Defendant engaged in a common course of conduct in contravention of the laws Plaintiff seeks to enforce individually, and on behalf of the other members of the proposed Class. Materially identical business practices, and injuries are involved. Individual questions, if any, pale

by comparison, in both quality and quantity, to the numerous common questions that dominate this action. Moreover, the common questions will yield common answers.

**C. Typicality – Federal Rules of Civil Procedure 23(a)(3)**

87. Plaintiff's claims are typical of the claims of the other members of the Class because, among other things, all members of the Class purchased, in a typical consumer setting, Defendant's Product, and were comparably injured through Defendant's same uniform misconduct described herein. Further, there are no defenses available to Defendant that are unique to Plaintiff or to any particular members of the Class.

**D. Adequacy of Representation – Federal Rules of Civil Procedure 23(a)(4)**

88. Plaintiff is an adequate representative of the members of the Class because Plaintiff's interests do not conflict with the interests of the other members of the Class that Plaintiff seeks to represent. Plaintiff has retained counsel competent and experienced in complex class action litigation and Plaintiff will prosecute this action vigorously. The Class's interests will be fairly and adequately protected by Plaintiff and Plaintiff's counsel. Plaintiff's counsel has represented consumers in a wide variety of actions where they have sought to protect consumers from fraudulent and deceptive practices.

**E. Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2)**

89. Defendant has acted or refused to act on grounds generally applicable to Plaintiff and the other members of the Class, thereby making appropriate final injunctive relief and declaratory relief, as described herein, with respect to the members of the Class as a whole.

**F. Insufficiency of Separate Actions – Federal Rule of Civil Procedure 23(b)(1)**

90. Absent a representative class action, members of the Class would continue to suffer the harm described herein, for which they would have no remedy. Even if separate actions could

be brought by individual consumers, the resulting multiplicity of lawsuits would cause undue burden and expense for both the Court and the litigants, as well as create a risk of inconsistent rulings and adjudications that might be dispositive of the interests of similarly situated purchasers, substantially impeding their ability to protect their interests, while establishing incompatible standards of conduct for Defendant. The proposed Class thus satisfies the requirements of Fed. R. Civ. P. 23(b)(1).

**G. Superiority - Federal Rule of Civil Procedure 23(b)(3)**

91. A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other members of the Class are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for members of the Class to individually seek redress for Defendant's wrongful conduct. Even if the members of the Class could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments; and increases the delay and expense to all parties and the court system and thereby unnecessarily clogging of dockets.

92. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Given the similar nature of the members of the Class's claims and the absence of material or dispositive differences in laws upon which the claims are based, the Class will be easily managed by the Court and the parties.

## FIRST CAUSE OF ACTION: VIOLATION OF NEW YORK GEN.BUS.LAW § 349, *et seq.*

93. Plaintiff repeats, re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs of this Class Action Complaint as if fully set forth herein verbatim.

94. The New York General Business Law Section 349 ("GBL §349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state . . ."

95. To state a claim under GBL §§ 349 and 350, "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct, that is (2) materially misleading, and that (3) the plaintiff suffered injury as a result of the allegedly deceptive act or practice.[16]

96. Walmart is a mass merchandiser of consumer products with net sales of $420 billion in the U.S. during its 2023 fiscal year.[17] Walmart has over 4,600 retail stores nationwide,[18] including 98 in New York.[19]

97. Walmart distributes, markets, promotes, advertises, and sells Great Value coffee creamers, including the Product at issue in this litigation.

98. Defendant's deceptive acts and practices were directed at, and impacted, consumers located in New York.

99. Defendant misleadingly, inaccurately, and deceptively advertises and markets its Product to consumers. Defendant's deceptive practices are likely to mislead— and have misled— reasonable consumers acting reasonably, such as Plaintiff and members of the Class.

---

[16] *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 941 (2012); *see Goshen v. Mutual Life Ins. Co. of N.Y.*, 98 N.Y.2d 314, 324 n.1 (2002).
[17] https://www.sec.gov/Archives/edgar/data/104169/000010416923000020/wmt-20230131.htm
[18] https://corporate.walmart.com/about/location-facts
[19] https://www.walmart.com/store-directory/ny

100. Specifically, Defendant marketed, labeled and advertised the Product in a deceptive, false and materially misleading manner since the representations contained on the Product stated that the Product contains 499.50 to 500.49 servings of powdered coffee creamer and that the serving size is "1 tsp (2g)". *See* Exhibit B. Based on this prominent labeling and advertising, a reasonable consumer purchasing this Product would reasonably believe that the Product contained 500 servings. Despite this prominent labeling and advertising, the Product does not contain the number of servings promised because Defendant incorrectly stated the metric mass equivalent of the one teaspoon serving size and used such erroneous metric mass equivalent to determine the number of servings provided by the Product.

101. Reasonable consumers rely on Defendant to honestly market and label the Product in a way that does not deceive reasonable consumers into believing they are purchasing Product that has 500 servings, when the truth is that the Product contains 23% fewer servings than the number of servings promised on the Product's label.

102. In addition, reasonable consumers would expect Defendant to honestly market and label the Product given that Walmart is "dedicated to help people around the world save money…" and one of its strategies "is to …make trust a competitive advantage." [20]

103. Defendant's improper consumer-oriented conduct —labeling and advertising the Product as providing 499.50 to 500.49 servings per container— is misleading in a material way in that it, inter alia, induced Plaintiff and the Class Members to purchase and pay a premium for Defendant's Product when they otherwise would not have or would have paid less for, because the Product contained only 386 servings not the promised 500 servings.

[20] https://www.sec.gov/Archives/edgar/data/104169/000010416923000020/wmt-20230131.htm at 6.

104. Defendant has deceived reasonable consumers, like Plaintiff and the Class, into believing the Product provided a number of servings that it did not.

105. Plaintiff and the Class Members have been injured inasmuch as they paid a price for the Product based on 500 servings, in circumstances in which the Product actually only provided 386 servings per container. Accordingly, Plaintiff and the Class Members received less than what they bargained and/or paid for.

106. Since Plaintiff purchased the Product as a product advertising itself as containing 499.50 to 500.49 servings of powdered coffee creamer, and it was not such a product, Plaintiff was damaged in proportion to the servings of powdered coffee creamer not received.

107. Specifically, Plaintiff and other consumers of the Product, were cheated out of 23% of the servings they paid for based on the advertising, marketing, packaging and labeling of the Product.

108. Defendant's advertising and the Product's packaging and labeling induced Plaintiff and the Class Members to buy Defendant's Product and to pay a premium price.

109. Defendant's deceptive and misleading practices constitute a deceptive act and practice in the conduct of business in violation of New York General Business Law §349(a) and Plaintiff and the Class Members have been damaged thereby.

110. GBL §349 gives the right to any person who has been injured by reason of any violation of GBL §349 to bring an action in his or her own name to enjoin such unlawful act or practice, an action to recover his or her actual damages or fifty dollars, whichever is greater, or both such actions.

111. Additionally pursuant to GBL §349, the Court has discretion to increase the award of damages to an amount not to exceed three times the actual damages up to $1,000 if the Court

finds the defendant willfully or knowingly violated GBL §349 and the discretion to award reasonable attorney's fees to a prevailing plaintiff.

112. On information and reasonable belief, Defendant had prior notice that the Product and advertising contained these untrue, false, and misleading statements regarding the number of servings provided by the Product. Defendant knew, or should have known, about the defect in the Product.

113. Despite being notified of the material misrepresentations described in this Class Action Complaint, Defendant made, and continues to make, these untrue, false and materially misleading statements regarding the number of servings provided by the Product.

114. As a result of Defendant's recurring, unlawful deceptive acts and practices, Plaintiff and the Class Members are entitled to monetary, statutory, compensatory, and treble damages, restitution, and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs. The damages suffered by the Plaintiff and the Class were directly and proximately caused by the deceptive and materially misleading practices of Defendant.

115. In addition, Plaintiff and Class Members seek equitable and injunctive relief against Defendant on terms that the Court considers reasonable to stop Walmart's illegal conduct, and reasonable attorneys' fees and costs.

116. Plaintiff and Class Members seek all available remedies, damages, and awards resulting from Defendant's violations of New York law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually, and on behalf of all others similarly situated members of the Class, prays for relief and judgement, including entry of an order, pursuant to each

cause of action set forth in this Complaint as follows:

a. For an order certifying that this action may be maintained as a class action, certifying Plaintiff as representatives of the Class, and designating Plaintiff's attorneys as Class counsel;

b. Directing that Defendant bear the costs of any notice sent to the Class;

c. For actual damages in amounts to be determined by the Court and/or jury;

d. For statutory damages and/or punitive damages, as provided by the applicable statutes invoked above;

e. For an award of equitable relief for all causes of action as follows:

    i. Enjoining Defendant from continuing to engage, use, or employ any deceptive business acts or practices related to the design, testing, distribution, assembly, development, marketing, advertising, or sale of the Product for the purpose of selling the Product in such manner as set forth in detail above, or from making any claims found to violate New York law or the other causes of action as set forth above;

f. Restoring all monies that may have been acquired by Defendant as a result of such unfair and/or deceptive act or practices;

g. For an award of attorney's fees and costs;

h. For an award of pre- and post-judgment interest on any amounts awarded; and

i. For any other relief the Court might deem just, appropriate, or proper.

**SECOND CAUSE OF ACTION:**
**VIOLATION OF NEW YORK GEN.BUS.LAW § 350, ET SEQ.**

117. Plaintiff repeats, re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs of this Class Action Complaint as if fully set forth herein verbatim.

118. The New York General Business Law §350 ("GBL §350") provides, in part, as follows: "False advertising in the conduct of any business, trade, or commerce or in the furnishing of any service in this state is hereby declared unlawful."

119. New York General Business Law § 350a(1) provides, in part, that: "The term "false advertising" means advertising, including labeling, of a commodity, . . . if such advertising is misleading in a material respect." In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof. . . "See GBL §350a(1).

120. As stated above, to state a claim under GBL §§ 349 and 350, "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct, that is (2) materially misleading, and that (3) the plaintiff suffered injury as a result of the allegedly deceptive act or practice.[21]

121. Walmart is a mass merchandiser of consumer products in the U.S. with net sales of $420 billion in the U.S. during its 2023 fiscal year[22]. Walmart has over 4,600 retail stores nationwide,[23] including 98 in New York.[24] .

122. Walmart distributes, markets, promotes, advertises, and sells the Great Value coffee creamers, including the Product at issue in this litigation.

123. Defendant's deceptive acts and practices were directed at, and impacted, consumers located in both New York and nationwide.

124. Defendant misleadingly, inaccurately, and deceptively advertises and markets its Product to consumers.

---

[21] *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 941 (2012); *see Goshen v. Mutual Life Ins. Co. of N.Y.*, 98 N.Y.2d 314, 324 n.1 (2002).
[22] https://www.sec.gov/Archives/edgar/data/104169/000010416923000020/wmt-20230131.htm
[23] https://corporate.walmart.com/about/location-facts
[24] https://www.walmart.com/store-directory/ny

125. Defendant's deceptive practices are likely to mislead— and have misled— reasonable consumers acting reasonably, such as Plaintiff and members of the Class.

126. Defendant's labeling of the Product contains untrue and materially misleading statements concerning Defendant's Product. The representations contained on the Product stated that the Product contains 499.50 to 500.49 servings of powdered coffee creamer and the serving size is "1 tsp (2g)" . Based on this prominent labeling and advertising, a reasonable consumer purchasing the Product would reasonably believe that the Product contained 500 servings of powdered coffee creamer. Despite this prominent labeling and advertising, the Product does not contain the number of servings promised, because Defendant incorrectly stated the metric mass equivalent of the one teaspoon serving size and used such erroneous metric mass equivalent to determine the number of servings provided by the Product.

127. Defendant has engaged in consumer-oriented conduct that is deceptive or misleading in a material way which constitutes false advertising in violation of Section 350 of the New York General Business Law. The labeling and packaging of the Product are directed at consumers and are likely to – and have- materially mislead a reasonable consumer acting reasonably under the circumstances.

128. Defendant's material misrepresentations were substantially uniform in content, presentation, and impact upon consumers at large. Moreover, all consumers purchasing the Product were, and continue to be, exposed to Defendant's material misrepresentations.

129. Plaintiff and the Class Members have been injured inasmuch as they reasonably relied upon the labeling, packaging, and advertising and paid a price for the Product based on 500 servings, but the Product was unable to provide the number of servings stated on its label. Accordingly, Plaintiff and the Class Members received less than what they bargained and/or paid

for.

130. Since Plaintiff purchased the Product as a product advertising itself as containing 499.50 to 500.49 servings of powdered coffee creamer, and it was not such a product, Plaintiff was damaged in proportion to the servings of powdered coffee creamer not received.

131. Specifically, Plaintiff and other consumers of the Product, were cheated out of 23% of the servings they paid for based on the advertising, marketing, packaging and labeling of the Product.

132. Defendant's advertising, packaging, and Product's labeling induced Plaintiff and the Class Members to buy Defendant's Product.

133. New York General Business Law §350-e gives the right to any person who has been injured by reason of any violation of GBL §350 to bring an action in his or her own name to enjoin such unlawful act or practice, an action to recover his or her actual damages or $500, whichever is greater, or both such actions.

134. Additionally, pursuant to New York General Business Law §350-e the Court has discretion to increase the award of damages to an amount not to exceed three times the actual damages, up to $10,000, if the Court finds that the defendant willfully or knowingly violated GBL §350 and discretion to award reasonable attorney's fees to a prevailing plaintiff.

135. Despite being notified of the material misrepresentations described in this Class Action Complaint, Defendant made, and continues to make, these untrue, false and materially misleading statements regarding the number of servings provided by the Product.

136. As a result of Defendant's recurring, unlawful deceptive acts and practices, Plaintiff and Class Members are entitled to recover the maximum amount allowed by law based on the following elements: monetary, statutory, compensatory, and treble damages, restitution, and

disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

137. In addition, Plaintiff and Class Members seek equitable and injunctive relief against Defendant on terms that the Court considers reasonable, and reasonable attorneys' fees and costs.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually, and on behalf of all others similarly situated members of the Class, prays for relief and judgement, including entry of an order, pursuant to each cause of action set forth in this Complaint as follows:

a. For an order certifying that this action may be maintained as a class action, certifying Plaintiff as representatives of the Class, and designating Plaintiff's attorneys as Class counsel;

b. Directing that Defendant bear the costs of any notice sent to the Class;

c. For actual damages in amounts to be determined by the Court and/or jury;

d. For statutory damages and/or punitive damages, as provided by the applicable statutes invoked above;

e. For an award of equitable relief for all causes of action as follows:

i. Enjoining Defendant from continuing to engage, use, or employ any deceptive business acts or practices related to the design, testing, distribution, assembly, development, marketing, advertising, or sale of the Product for the purpose of selling the Product in such manner as set forth in detail above, or from making any claims found to violate New York law or the other causes of action as set forth above;

f. Restoring all monies that may have been acquired by Defendant as a result of

such unfair and/or deceptive act or practices;

g. For an award of attorney's fees and costs;

h. For an award of pre- and post-judgment interest on any amounts awarded; and

i. For any other relief the Court might deem just, appropriate, or proper.

**THIRD CAUSE OF ACTION:**
**BREACH OF EXPRESS WARRANTY**

138. Plaintiff repeats, re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs of this Class Action Complaint as if fully set forth herein verbatim.

139. Plaintiff and Class Members formed a contract with Defendant at the time Plaintiff and Class Members purchased the Product.

140. The terms of the contract include the promises and affirmations of fact made by Defendant on the Product's packaging and labels as described above.

141. Defendant created express warranties through written descriptions on its Product that the Product contained 499.50 to 500.49 servings and that the serving size for the Product is "1 tsp. (2g)".

142. Defendant made these representations to all consumers, which became the benefit of the bargain between Plaintiff, Class Members, and the Defendant and were material to the Plaintiff's and Class Members' decisions to purchase the Product.

143. Defendant breached the express warranties because, despite the above-referenced representations, based on expert testing the metric mass equivalent of a 1 teaspoon serving of the Product is not 2 grams as stated on the Product's NFP but is in fact 2.6 grams.

144. Additionally, the Product's nutrition facts panel states that the contents of the Product provide 499.50 to 500.49 servings when in fact the Product can only yield on average 386 servings because the Defendant incorrectly calculated the number of servings provided by the

Product by using the erroneously stated metric mass equivalent of 2g per teaspoon.

145. Defendant's failure to comply with Federal labeling regulations resulted in Defendant breaching the express warranties it provided on the Product's labeling by: (1) erroneously stating the metric mass equivalent of the stated serving size on the nutrition facts panel of the Product, and (2) incorrectly stating the number of servings provided by the Product on the NFP because Defendant calculated the number of servings using the erroneously stated metric mass equivalent (2g) instead of the true mass equivalent of 1 teaspoon of the Product, which is 2.6g, or rounded per regulation, 2.5g.

146. Despite being notified of the material misrepresentations described in this Class Action Complaint, Defendant made, and continues to make, these untrue, false and materially misleading statements regarding the number of servings provided by the Product.

147. Defendant knew, or should have known, about the defect in the Product.

148. As a direct and proximate result of Defendant's breach of express warranties concerning the number of servings of powdered coffee creamer contained in the Product, Plaintiff and members of the Class have suffered and will continue to suffer damages.

149. Plaintiff seeks all available remedies, damages, and awards resulting from Defendant's breaches of express warranties.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually, and on behalf of all others similarly situated members of the Class, prays for relief and judgement, including entry of an order, pursuant to each cause of action set forth in this Complaint as follows:

a. For an order certifying that this action may be maintained as a class action, certifying Plaintiff as representatives of the Class, and designating Plaintiff's

attorneys as Class counsel;

b. Directing that Defendant bear the costs of any notice sent to the Class;

c. For actual damages in amounts to be determined by the Court and/or jury;

d. For statutory damages and/or punitive damages, as provided by the applicable statutes invoked above;

e. For an award of equitable relief for all causes of action as follows:

i. Enjoining Defendant from continuing to engage, use, or employ any deceptive business acts or practices related to the design, testing, distribution, assembly, development, marketing, advertising, or sale of the Product for the purpose of selling the Product in such manner as set forth in detail above, or from making any claims found to violate New York law or the other causes of action as set forth above;

f. Restoring all monies that may have been acquired by Defendant as a result of such unfair and/or deceptive act or practices;

g. For an award of attorney's fees and costs;

h. For an award of pre- and post-judgment interest on any amounts awarded; and

i. For any other relief the Court might deem just, appropriate, or proper.

**FOURTH CAUSE OF ACTION:**
**UNJUST ENRICHMENT**
**(In the Alternative)**

150. Plaintiff repeats, re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs of this Class Action Complaint as if fully set forth herein verbatim.

151. As a result of Defendant's wrongful and deceptive conduct alleged herein, Defendant knowingly and voluntarily accepted and retained wrongful benefits in the form of

money paid by the Plaintiff and members of the Class when they purchased the Product.

152. In so doing, Defendant acted with conscious disregard for the rights of Plaintiff and members of the Class.

153. As a result of Defendant's wrongful conduct as alleged herein, Defendant has been unjustly enriched at the expense of, and to the detriment of, Plaintiff and members of the Class.

154. Defendant's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

155. Under the common law doctrine of unjust enrichment, it is inequitable for Defendant to be permitted to retain the benefits it received, and is still receiving, without justification, from the false and deceptive labeling and marketing of the Product to Plaintiff and members of the Class.

156. Defendant's retention of such funds under circumstances making it inequitable to do so constitutes unjust enrichment.

157. The financial benefits derived by Defendant rightfully belong to Plaintiff and members of the Class.

158. Defendant should be compelled to disgorge in a common fund for the benefit of Plaintiff and members of the Class all wrongful or inequitable proceeds received by them.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually, and on behalf of all others similarly situated members of the Class, prays for relief and judgement, including entry of an order, pursuant to each cause of action set forth in this Complaint as follows:

a. For an order certifying that this action may be maintained as a class action, certifying Plaintiff as representatives of the Class, and designating Plaintiff's

attorneys as Class counsel;

b. Directing that Defendant bear the costs of any notice sent to the Class;

c. For actual damages in amounts to be determined by the Court and/or jury;

d. For statutory damages and/or punitive damages, as provided by the applicable statutes invoked above;

e. For an award of equitable relief for all causes of action as follows:

    i. Enjoining Defendant from continuing to engage, use, or employ any deceptive business acts or practices related to the design, testing, distribution, assembly, development, marketing, advertising, or sale of the Product for the purpose of selling the Product in such manner as set forth in detail above, or from making any claims found to violate New York law or the other causes of action as set forth above;

f. Restoring all monies that may have been acquired by Defendant as a result of such unfair and/or deceptive act or practices;

g. For an award of attorney's fees and costs;

h. For an award of pre- and post-judgment interest on any amounts awarded; and

i. For any other relief the Court might deem just, appropriate, or proper.

## DEMAND FOR JURY TRIAL

159. Plaintiff hereby demands trial by jury on all issues so triable.

Dated: September 19, 2024 Respectfully submitted,

**The Law Offices of Howard W. Rubinstein, P.A.**

By: ______________________________

Ariana V. Held (NY State Bar No. 6024723),
Of Counsel
305 Broadway, Suite 700
New York, New York 10007
(215) 500-3289
ariana@avheld.com

**COUNSEL FOR PLAINTIFF**